SHARON FRANCIS,

                    Plaintiff/Appellant,

vs.                                       Case No. 3:09-cv-238-J-32JRK

LANDSTAR SYSTEM HOLDINGS, INC.,

                    Defendant/Appellee.

_____

## <u>ORDER</u>[1]

This case is before the Court on plaintiff Sharon Francis' ("Francis") Motion to Vacate and Set Aside Arbitration Decision (Doc. 1), to which defendant Landstar System Holdings, Inc. ("Landstar") filed a response in opposition (Doc. 6). Plaintiff filed a reply to defendant's opposition (Doc. 7), and both parties have filed supplemental briefs (Docs. 13, 14). The Court heard oral argument on August 25, 2009, the record of which is incorporated by reference. (Doc. 12).

## I.    BACKGROUND

Francis, an African-American woman, was terminated from her position as Senior Graphics Examiner at Landstar on June 7, 2007 after twelve (12) years of employment. Pursuant to an agreement to arbitrate all employment-related claims, Francis submitted a request for arbitration, alleging racial harassment, discriminatory discharge and retaliation

---

[1]Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The parties jointly selected an arbitrator, who conducted proceedings pursuant to a set of Arbitration Rules (Doc. 11-1) incorporated into the parties' agreement to arbitrate (the "Arbitration Rules"). The parties presented evidence at a two-day hearing on October 23-24, 2008. On February 13, 2009, the arbitrator issued a decision denying Francis all relief. (Doc. 1-5).

Francis was one of two graphic designers in Landstar's five-person corporate communications department, the other being Suzanne Jones, a Caucasian woman. Before her termination, Francis had been embroiled in a year-long personal dispute with Jones, over which time Francis made several allegations of mockery, inappropriate conduct, and conspiracy against Jones and several of their co-workers. Landstar management first investigated Francis' claims in April of 2007 and found no evidence of race-based harassment,[2] concluding that the issues were the result of personal friction between the two women.

On June 1, 2007, the dispute between Francis and Jones came to a head. Francis left work without permission after overhearing a conversation between Jones and several other Landstar employees which led her to believe that the group had hired a "hit man" to harm her and Sara Smith, an African-American co-worker. Several hours after leaving the

---

[2] Nor did Francis make such a claim at the time. Francis was asked as part of the April 2007 investigation whether she thought the behavior of her coworkers was racially based, and she responded "no" and that she believed other employees were simply trying to irritate her.

office, Francis brought her concerns to Joan Norve, Landstar's Vice President of Human Resources. After a second investigation prompted by this incident uncovered no evidence of race-based harassment,[3] Landstar terminated both Francis and Jones, finding each to be equally responsible for the untenable situation in their department.[4]

Francis was told that she was being terminated for continued disruptive behavior and inappropriate conduct, and for leaving work early on Friday, June 1, which was illustrative of her disruptive behavior.[5]  In her decision, the arbitrator noted that "Landstar, through several witnesses, gave the following reasons for terminating Francis: 1) disrupting [sic] in the workplace after repeatedly being warned that continued disruptive behavior could lead to discipline up to and including termination; and 2) leaving work without permission." (Doc. 1-5 at 24).  Despite some conflicting evidence in the record, the arbitrator determined that Landstar's stated reasons were worthy of credence and were sufficient to explain the decision to terminate Francis.  (Doc. 1-5 at 27).  Francis, dissatisfied with the arbitrator's findings of fact and conclusions of law, has asked this Court to review the decision for

---

[3]As part of the second investigation, Francis was interviewed on June 5, 2007 by Landstar's counsel and was asked if she believed the alleged harassment was racial. Francis answered in the affirmative.  The attorney who interviewed Jones did not testify at the arbitration hearing and no investigatory report from Landstar's counsel was entered into record, so Francis' testimony on this point is undisputed.

[4]Smith was also terminated as a result of her involvement in the workplace disruption.

[5]The arbitrator stated: "I find that Francis was terminated for engaging in disruptive and inappropriate conduct, including leaving work without notice on June 1st, after having been instructed to focus on work and cooperate with her coworkers and management team." (Doc. 1-5 at 15-16).

possible vacatur.

## II.     LEGAL ANALYSIS

### A.      The Arbitration Rules v. The Federal Arbitration Act

As a threshold matter, it is necessary to address the unique posture of this case. Francis filed her motion to vacate pursuant to Rule 19 of the Arbitration Rules ("Rule 19"), which states that "[t]he Award of the Arbitrator shall be final and binding unless, within thirty (30) days after service of the decision, either party files with a court a motion to vacate, modify or correct the Award."[6]  (Doc. 11-1 at 9).  Rule 19 also provides that "[i]n any action to vacate, modify, set aside or enforce the award, the arbitrator shall be deemed to have exceeded her powers *if the award was premised on an error of law or clearly erroneous fact(s).*"  (Id.)(emphasis added).  Francis contends that the arbitrator exceeded her powers under the Arbitration Rules because the decision was based on errors of law and erroneous fact-finding, both of which evidence a "manifest disregard for the law" under Eleventh Circuit precedent (discussed *infra* in greater detail).  Francis' motion neither invokes nor makes mention of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), which is the vehicle normally used to petition a federal court to vacate, modify, or correct an arbitration award.

The FAA is implicated whenever there is a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out

---

[6]Despite Rule 19's lack of direction as to the particular court in which to file, Francis chose this Court because her claims in the underlying arbitration rely on Title VII.  She therefore asserts that her right to relief "depends on the resolution of substantial questions of federal law."  (Doc. 13 at 1).

of such contract or transaction." 9 U.S.C. § 2. The Supreme Court and the Eleventh Circuit

have held that the FAA generally applies to agreements to arbitrate made in the employment

context. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001)(holding that the

phrase "contract evidencing a transaction involving commerce" in § 2 of the FAA is not

limited to commercial contracts, but includes employment contracts, and exclusion in § 1 of

the FAA exempts only contracts of employment of transportation workers); Caley v.

Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)("Indeed, compulsory

arbitration agreements are now common in the workplace, and it is not an unlawful

employment practice for an employer to require an employee to arbitrate, rather than litigate,

rights under various federal statutes, including employment-discrimination statutes.") Where

parties have entered into an arbitration agreement falling within the statute's reach, §§ 9, 10

and 11 of the FAA provide that a party may move the district court whose boundaries within

which an arbitration award is made to confirm, vacate, or modify the award. 9 U.S.C. §§ 9-

11.[7]

_____

[7]As Francis is seeking vacatur of the award, the FAA provision implicated is § 10, which
provides:

> "(a) *In any of the following cases the United States court in and for the district wherein
> the award was made may make an order vacating the award upon the application of
> any party to the arbitration*–
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either
> > of them;

5

Francis argues that the FAA is permissive, and that the statute does not *require* parties to employ its procedures for the enforcement and judicial review of arbitration awards even where it clearly applies. However, the Arbitration Rules state that "[b]ecause the Agreement evidences a transaction involving interstate commerce the Federal Arbitration Act shall control." (Doc. 11-1 at 1). Francis claims that this language is "a passing reference to the FAA" and does not apply because she "neither invoked nor relied on the FAA at any time during the arbitration proceedings, nor did she in her Motion to Vacate." (Doc. 13 at 3, 4). However, Francis cannot properly argue for enforcement of the Arbitration Rules' review provisions while simultaneously asking the Court to ignore an explicit invocation of the FAA set forth in those same Arbitration Rules. Further, despite Francis' characterization of Rule 19 as differing drastically from the vacatur provisions of the FAA, a closer analysis shows that the two were drafted to work in concert.

Section 10(a)(4) of the FAA provides that vacatur is proper "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Rule 19 states that in an action to vacate an

---

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. § 10(a)(emphasis added).

award, "the arbitrator shall be deemed to have exceeded his/her powers *if the award was premised on an error of law or clearly erroneous fact(s).*" (Doc. 11-1 at 9)(emphasis added). As the FAA does not explicitly define what it means for an arbitrator to exceed her powers, Rule 19 was intended to supplement § 10(a)(4) of the FAA by defining the circumstances under which a court should make such a finding.[8] There is therefore no question that the parties intended the FAA, as contractually supplemented by the parties, to apply to their arbitration proceedings and any subsequent judicial review. Despite the fact that Francis did not "invoke" the FAA, the Court's review is driven by its provisions.

### B.    Subject Matter Jurisdiction

Despite the applicability of the FAA, it is not entirely clear that the Court has jurisdiction over Francis' motion to vacate. The parties share the view that subject matter jurisdiction is proper because Francis' underlying claim in arbitration is premised on federal law. However, "jurisdiction cannot be conferred by consent," and "[g]iven that the parties share the goal of having this case decided in federal court, [a] district court should be especially mindful of its independent obligation to ensure that jurisdiction exists before federal judicial power is exercised over the merits of the case." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1275 (11th Cir. 2000). As a result, this Court has the obligation to

---

[8]The Supreme Court has held that the FAA does not prevent enforcement of a private agreement to arbitrate under different rules than those set forth specifically in the FAA. Volt Info. Sciences, Inc. v. Bd. of Trs. Of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989). Whether this particular contractual expansion is a proper one is another matter altogether. See Section C, *infra*.

ensure that it has proper subject matter jurisdiction to review the arbitrator's decision. <u>See</u> <u>Baltin v. Alaron Trading Corp.</u>, 128 F.3d 1466, 1468-69 (11th Cir. 1997). The Court may initiate a review of subject matter jurisdiction *sua sponte.* <u>Id.</u> at 1468.

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." <u>Id.</u> at 1469 (internal citation omitted). The parties to this action are not diverse. As a result, the Court must analyze whether jurisdiction has been granted by statute or is premised on the resolution of a federal question.

## 1. No Independent Statutory Grant

The Supreme Court has held that the FAA does not, standing alone, confer subject matter jurisdiction upon federal courts. <u>Hall Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, __,128 S.Ct. 1396, 1402 (2008)(describing the FAA as "'something of an anomaly in the field of federal-court jurisdiction' in [that it] bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis")(quoting <u>Moses H. Cone Memorial Hosp. v.</u> <u>Mercury Constr. Corp.</u>, 460 U.S. 1, 25, n.32 (1983)); <u>see</u> <u>also</u> <u>JDC (America) Corp. v.</u> <u>Amerifirst Florida Trust Co.</u>, 736 F.Supp. 1121, 1123 (S.D. Fla. 1990)(holding that the enforcement of the FAA's policy of liberally favoring arbitration is left to state courts when no independent basis for federal jurisdiction exists). As a result, although the FAA provides the substantive law pursuant to which this Court must review Francis' motion to vacate, it does not provide a statutory grant of jurisdictional power to do so.

## 2.      Federal Question Jurisdiction

Federal question jurisdiction is found where the "well-pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983).  Although the FAA controls the Court's review, "a suit brought pursuant to the FAA is not intrinsically a case presenting a federal question." Baltin, 128 F.3d at 1472.

Both parties argue that this case presents a federal question because (1) the underlying dispute in arbitration is premised on federal law;[9] and (2) Francis' motion to vacate requires the resolution of a question of federal law; namely, whether the arbitrator's decision misapplied Title VII law.  The Eleventh Circuit has not directly addressed either circumstance.

As to the first, despite Baltin's guidance that the FAA cannot, by itself, confer subject matter jurisdiction, the Eleventh Circuit expressly left open the question of "whether a federal court would have subject matter jurisdiction over an action brought under FAA sections 10

_____

[9]The Supreme Court, in Vaden v. Discover Bank, 129 S.Ct. 1262, 173 L.Ed. 2d 206 (2009), recently determined that a district court could properly look through a petition to compel arbitration under § 4 of the FAA to find federal question jurisdiction.  The Court interpreted the language of § 4, which "authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, 'save for [the arbitration] agreement'" to mean that a district court could look to the underlying dispute in arbitration to determine whether subject matter jurisdiction exists. Id. at 1267-68.  However, as § 10 contains no such explicit language, it is not a foregone conclusion that Vaden permits a district court to "look through" a motion to vacate in the same manner.  As a result, the Court will proceed as though Vaden does not authorize such jurisdiction.

9

or 11 *if the underlying claim in arbitration concerned a federal question.*" Id. at 1472 n.15. The Eleventh Circuit cited to Minor v. Prudential Sec. Inc., 94 F.3d 1103 (7th Cir. 1996) for its treatment of the issue. Id. Minor involved an appeal from the district court's denial of a motion to vacate pursuant to § 10 of the FAA. Minor, 94 F.3d at 1104. The district court had dismissed the motion due to lack of subject matter jurisdiction, as the parties were not diverse and the motion to vacate (which was premised on grounds of fraud in the discovery process) presented no federal question. Id. On appeal, the Seventh Circuit analyzed whether the underlying claim in arbitration had any bearing on federal subject matter jurisdiction, and determined that it did not.[10] Id. at 1106. Though Baltin did not expressly endorse this result, several circuits have agreed with the Seventh that the mere presence of a federal claim in the underlying arbitration is insufficient to invoke federal question jurisdiction in the context of § 10.[11]

─────────────────

[10]This result is logical, considering the posture in which most motions to vacate arbitration awards reach the district court. The primary grounds upon which vacatur is sought sound in fraud or misconduct on the part of the arbitrator (whether via intentional bias, exceeding his/her authority, or disregarding the applicable law). These determinations normally do not involve constructions of federal law, and as the Supreme Court pointed out in Moses H. Cone, may be appropriately resolved by state courts. See Moses H. Cone, 460 U.S. at 25.

[11] See, e.g., Luong v. Circuit City Stores, Inc., 368 F.3d 1009, 1111 (9th Cir. 2004)(finding that § 10 does not "create federal question jurisdiction even when the underlying arbitration involves a federal question"); Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 26 (2d Cir. 2000) ("Simply raising federal-law claims in the underlying arbitration is insufficient to supply [an] 'independent basis' [of jurisdiction]"); Kasap v. Folger Nolan Fleming & Douglas, Inc. 166 F.3d 1243, 1247 (D.C. Cir. 1999)("[W]e agree with the Seventh Circuit's conclusion that § 10 does not create federal question jurisdiction, even when the underlying arbitration involves federal law, essentially because of the Supreme Court's general pronouncements concerning the limits of federal district court jurisdiction over the Federal Arbitration Act.")

However, the Seventh Circuit went on to state that "[i]f Minor's *motion to vacate* somehow involved the resolution of her federal claims or some question of federal law, then... the district court *would* have subject matter jurisdiction." Minor, 94 F.3d at 1106 (emphasis added). This point has not been addressed, even in passing, by the Eleventh Circuit. It has been the subject of a Second Circuit case, Greenberg v. Bear, Stearns & Co., 220 F.3d 22 (2d Cir. 2000).

In Greenberg, plaintiff appealed from a district court decision denying his motion to vacate an arbitration award which dismissed his securities fraud claims against Bear Stearns. Greenberg, 220 F.3d at 24. Greenberg argued that vacatur was proper because the arbitrators had manifestly disregarded federal law.[12] Id. At the outset, the court opined that "whether or not a petition to vacate under § 10 raises a substantial federal question turns on the ground for the petitioner's challenge to the award." Id. at 26. The court found that:

> [i]n contrast to grounds of review that concern the arbitration process itself – such as corruption or abuse of power – review for manifest disregard of federal law necessarily requires the reviewing court to do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law. This process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present.

Id. at 27; *accord* Luong, 368 F.3d at 1112. The court distinguished both Minor and Baltin, noting that while "[m]any courts have found the simple presence of federal claims in the

---

[12] Greenberg filed his petition under § 10 of the FAA, but relied on the common law grounds of manifest disregard for the law rather than any of the four statutory grounds set forth in § 10(a). See n.7, *supra*; Sections C-D, *infra.*

arbitration itself insufficient as an independent basis for federal jurisdiction[,] [t]hese cases... generally did not involve a petition to vacate on the grounds of manifest disregard of federal law in the arbitrators' resolution of the underlying federal claims." <u>Greenberg</u>, 220 F.3d at 27.

This Court finds the Second Circuit's analysis to be persuasive. In this case, Francis argues that the arbitration award should be vacated on the grounds that the arbitrator misapplied federal law interpreting Title VII. As <u>Greenberg</u> reasoned, "[w]hile federal claims may appropriately be resolved through arbitration, the federal courts have a strong interest in ensuring that arbitrators interpret and apply federal law properly, even if within a wide range of tolerance." <u>Id.</u> The Court finds that it has federal question subject matter jurisdiction.

### C. Vacatur for "Exceeding Powers" Under FAA § 10

The Court must next determine the appropriate standard of review. The Court acknowledges that "[b]ecause arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law." <u>AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.</u>, 508 F.3d 995, 1001 (11th Cir. 2007)(internal quotation omitted). Where, as here, the FAA controls the court's review, "[t]he party seeking vacatur has the burden to overcome the strong presumption under the [FAA] that the arbitration award should stand," <u>Cunningham v. Pfizer, Inc.</u>, 294 F.Supp. 2d 1329, 1331 (M.D. Fla. 2003)(citing 9 U.S.C. § 9, which states that if either party applies to the federal court for confirmation of an arbitration award, "the court *must* grant such an order unless the award

12

is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title")(emphasis added).

Francis does not contend and has not shown that the arbitration award was procured by fraud or corruption, or that the arbitrator was guilty of misconduct. Thus, § 10(a)(1) and (3) of the FAA are inapplicable. In addition, while Francis states several times in her brief that the arbitrator showed bias in favor of Landstar (most often with regard to adverse factual findings), she has not established the "evident partiality or corruption" on the part of the arbitrator required to implicate § 10(a)(2).[13] Further, Francis does not rely on that portion of § 10(a)(4) which calls for vacatur where the arbitrator so imperfectly executed her powers "that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). As a result, Francis' only available grounds for vacatur of the arbitration decision under the FAA is a showing that the arbitrator "exceeded [her] powers" pursuant to the first clause of § 10(a)(4).

Francis argues that Rule 19 of the Arbitration Rules serves to broaden the scope of this provision by specifically defining the circumstances in which an arbitrator has exceeded her powers. However, the Supreme Court has stated that where the FAA applies, §§ 10 and 11 provide the exclusive grounds for judicial vacatur or modification of an arbitration award.

---

[13]See Austin South I, Ltd. V. Barton-Malow Co., 799 F.Supp. 1135, 1142 (M.D. Fla. 1992)("The burden of proof for vacating an arbitration award based upon alleged bias is a heavy one. The party must demonstrate that the arbitrator had a *personal interest in the proceedings, whether pecuniary or otherwise*, which would have biased his or her judgment in the proceedings")(emphasis added).

Hall Street, 128 S.Ct. at 1403; see also AIG Baker Sterling Heights, L.L.C. v. American Multi-Cinema, Inc., 579 F.3d 1268, 1276 (11th Cir. 2009)("The Court held [in Hall Street] that parties could not contractually agree in an arbitration agreement to expand judicial review of arbitration proceedings")(Kravitch, J., concurring in part and dissenting in part).  The Supreme Court explicitly rejected the idea that §§ 10 and 11 were "mere threshold provisions open to expansion by agreement," thereby foreclosing parties' ability to contractually alter the scope of judicial review under those provisions.[14]  Hall Street,128 S.Ct. at 1403. The Court stated that the language of §§ 10 and 11 should be read as exclusive because "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring arbitration theory to grief in post-arbitration process." Id. at 1405 (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003)).

Section 10 does not contain any language allowing for judicial vacatur where the arbitrator's decision "was premised on an error of law or clearly erroneous fact(s)," as provided in Rule 19.  As Hall Street indicates that such supplemental language is an improper expansion of this Court's judicial review under the FAA, the sole remaining inquiry

_____

[14]This, of course, is the reason Francis seeks to avoid the FAA – the standards enunciated in Rule 19 allow for broader judicial review than the actual language of § 10(a)(4) as the latter has been interpreted by the courts.  It should be noted that the Arbitration Rules were last revised by Landstar in May of 2002 and therefore had not been updated to reflect the Supreme Court's decision in Hall Street.

is whether, under § 10(a)(4), the arbitrator "exceeded [her] powers." This requires i) a review

of the scope of authority granted to the arbitrator under the Arbitration Rules and ii) a review

of the caselaw interpreting § 10(a)(4) to determine whether the arbitrator exceeded those

enumerated powers in this case.

"Arbitrators' authority is primarily derived from the 'provisions of the arbitration

agreement under which the arbitrators were appointed.'" Cunningham, 294 F.Supp. 2d at

1332 (quoting Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831 (11th Cir. 1991)).

"Our inquiry under § 10(a)(4)... focuses on whether the arbitrators had the power, based on

the parties' submissions or the arbitration agreement, to reach a certain issue, not whether

the arbitrators correctly decided the issue." Waddell v. Holiday Isle, L.L.C., 2009 WL

2413668 at *4 (S.D. Ala. August 4, 2009)(quoting DiRussa v. Dean Witter Reynolds, Inc.,

121 F.3d 818, 824 (2d Cir. 1997)). Because of the limited nature of this review, "[n]either

erroneous legal conclusions nor unsubstantiated factual findings justify federal court review

of an arbitral award under the [FAA]...." Kyocera, 341 F.3d at 994; see also Scott v.

Prudential Securities, Inc., 141 F.3d 1007, 1014 (11th Cir. 1998)("It is settled law... that

'[c]ourts are generally prohibited from vacating an arbitration on the basis of errors of law or

interpretation'")(quoting O.R. Sec. Inc. v. Professional Planning Assoc., 857 F.2d 742, 746

(11th Cir. 1988)).

Rule 8 of the Arbitration Rules, entitled "Scope of Arbitral Authority," states the

following:

      A.     Identification of Legal Basis for Claim.  The Arbitrator must first identify

the state or federal law upon which the Dispute relies. If any [Request for Arbitration ("RFA")] or counter-RFA fails to identify such basis, the Arbitrator shall require the Claimant to more clearly and precisely identify the legal and factual basis of the Dispute. If the Claimant is unable to state a legally cognizable claim, the Arbitrator shall dismiss the RFA.

B. <u>Decision Confined to Law Governing Claim</u>. After identifying the state or federal basis for the Dispute, the Arbitrator's authority is strictly limited to resolving the Dispute on the basis of such applicable state or federal law. The arbitrator may not resolve the dispute by looking beyond the law upon which the claim or counterclaim is based, and therefore may not invoke or rely upon concepts of just cause, seniority or any other concept beyond that particular law.

(Doc. 11-1 at 4).

The arbitrator acted well within her authority in deciding Francis' case. Francis' contention that the arbitrator utilized an improper legal standard to analyze the issue of pretext under Title VII is an argument that the law was misapplied. However, "[s]ection 10(a)(4) of the FAA 'does not allow an arbitration award to be vacated solely on the basis of error of law or interpretation but requires something more, such as misconduct pertaining to the proceedings on the part of the arbitrators or the parties.'" <u>Cunningham</u>, 294 F.Supp. 2d at 1333 (quoting <u>Robbins v. Day</u>, 954 F.2d 679, 683 (11th Cir.1992)). As Francis has advanced no such evidence, she has no grounds for vacatur under the FAA.

**D. "Manifest Disregard for the Law"**

As Francis' arguments must fail under the statutory grounds stated in the FAA, her sole remaining vehicle for vacatur is common law. Prior to <u>Hall Street</u>, the Eleventh Circuit had recognized three non-statutory grounds for vacatur of an arbitration award. <u>See</u> <u>B.L. Harbert International, L.L.C. vs. Hercules Steel Company</u>, 441 F.3d 905, 910 (11th Cir.

16

2006).[15] "An award may be vacated if it is arbitrary and capricious, if enforcement of the award is contrary to public policy, or if the award was made in manifest disregard for the law." Id. (internal citations omitted). Citing Hercules Steel, Francis argues only that the arbitrator's decision demonstrates a manifest disregard for the law; thus, the Court addresses only that issue.

Vacatur of an arbitration decision for manifest disregard for the law should be granted only where there is "clear evidence that the arbitrator was 'conscious of the law and deliberately ignore[d] it.'" Hercules Steel, 441 F.3d at 910 (quoting Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461 (11th Cir. 1997)(alteration in original)). "*Even if the*

_____

[15]It is unclear whether the Supreme Court in Hall Street intended to eradicate federal common law grounds for vacatur. Though Hall Street specifically disavowed that Wilko v. Swan, 346 U.S. 427 (1953) had created "manifest disregard for the law" as an additional argument available to parties seeking to set aside arbitration decisions, courts have struggled with whether the Supreme Court actually intended to foreclose this option. Compare Ramos-Santiago v. United Parcel Service, 524 F.3d 120, 124 n.3 (1st Cir. 2008)("We acknowledge the Supreme Court's recent holding in Hall Street [citation omitted] that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act") with Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94-96 (2d Cir. 2008), *cert. granted*, 129 S.Ct. 2793 (2009)(finding that "'manifest disregard,' reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA, remains a valid ground for vacating arbitration awards"); see also Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 355 (5th Cir. 2009)(stating that "Hall Street unequivocally held that the statutory grounds are the exclusive means for vacatur under the FAA. Our case law defines manifest disregard of the law as a *nonstatutory* ground for vacatur. Thus, to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA")(emphasis in original; internal citations omitted). The Eleventh Circuit has not yet addressed the continuing viability of non-statutory grounds. Presumably, the question will be definitively answered upon the Supreme Court's consideration of Stolt-Nielsen. Here, this Court will assume *arguendo* that, in a proper case, manifest disregard is still a viable ground.

*arbitrator applied the wrong legal standard*, [a challenger must] show 'that this alleged error was intentional or that the arbitrator made a conscious decision not to follow the appropriate legal standard.'" Id. (parenthetically quoting Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1223 (11th Cir. 2000)(emphasis added)). Montes, the case in which the Eleventh Circuit adopted manifest disregard for the law as a common law ground for challenging an arbitration decision, "remains the only case in which [the Eleventh Circuit] ha[s] ever found the exceptional circumstances that satisfy the exacting requirements of this exception." Id.

Francis argues that the arbitrator was conscious of the law of pretext under Title VII and deliberately utilized an improper standard to analyze the issue. As evidence of this, Francis notes that two weeks before the arbitration hearing, the arbitrator culled a pretext standard from Brown v. Sybase, Inc., 287 F.Supp. 2d 1330 (S.D. Fla. 2003)[16] to determine that Francis' claims should survive summary judgment, but cited Hughes v. General Motors Corp., 212 Fed. Appx. 497 (6th Cir. 2007), an unreported Sixth Circuit case, in making her final decision on the issue.[17] Francis argues that applying an unreported Sixth Circuit

_____

[16] The Sybase standard states that a plaintiff may show pretext by showing that 1) the stated reasons for the termination were incredible or 2) the evidence produced would support a finding by the arbitrator that racial or retaliatory animus was a more likely reason for the termination than the stated reasons. Id. at 1345 (citing Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1332 (11th Cir.1998)).

[17] The Hughes standard states that "[p]retext is established 'by showing that 1) the stated reasons [for termination] had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) the stated reasons were insufficient to explain the defendant's action.'" Id. at 502 (quoting Johnson v. Univ. of Cincinnati, 215 F.3d 561, 573 (6th Cir.2000)). What most concerned Francis, however, was the arbitrator's quotation (and thus, Francis argues, her application) of this additional sentence from Hughes: "However, '[a] reason cannot be proved

decision rather than the standard enunciated in her summary judgment order evidences the arbitrator's intent to arrive at a predetermined verdict by manipulating the law and the facts.[18]

However, the mere use of a different legal formulation for pretext is not evidence that the arbitrator intentionally or consciously ignored the law. Whatever the arbitrator's reasoning for utilizing the Sixth Circuit case, her doing so does not rise to the lofty threshold required to vacate her award for manifest disregard for the law. Further, even if the Sybase standard favored by Francis were applied to the arbitrator's findings of fact, the result would not change, as the arbitrator specifically found that (1) Landstar's proffered reasons for Francis' termination were credible and (2) racial animus was *not* a more likely reason for the termination than the stated reasons.

Francis' claims that the arbitrator ignored facts favorable to Francis to alter the pretext analysis are equally without merit. In determining whether an employer's proffered reasons for termination were a cover-up for an unlawful purpose, the arbitrator "must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Moorer v. City of

_____

to be a 'pretext *for discrimination*' unless it is shown *both* that the reason is false, *and* that discrimination was the real reason.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993))(emphasis and alteration in original). Francis contends that this statement is a description of "pretext plus," and that such a standard is inappropriate in this case.

[18] Francis also notes that the arbitrator did not utilize either party's briefed law on the issue of pretext.

Montgomery, 293 Fed. Appx. 684, 688-89 (11th Cir. 2008)(quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).  Abiding by this standard, the arbitrator took into account each inconsistency raised by Francis, and concluded that Landstar's proffered reasons were still worthy of credence.  She stated her conclusion on the issue of pretext thusly:

> The arbitrator concludes after hearing the witness testimony and making credibility assessments that the true reason Francis was terminated was her involvement in the 'disruptive behavior' outlined in the [arbitrator's] Finding of Facts.... Accordingly, the arbitrator concludes Francis *has not offered sufficient evidence to raise a question as to whether Landstar's proffered legitimate, non-discriminatory reason for terminating her – that she was involved in ongoing confrontations with her co-workers, Jones specifically – was pretext for unlawful discrimination*, and her claim for race discrimination must fail.

(Doc. 1-5 at 27)(emphasis added).

There is simply no basis to conclude that the arbitrator acted in manifest disregard for the law.

### E.    Sanctions

Landstar asks for sanctions for what it considers to be Francis' "frivolous motion" to vacate filed in the face of the Eleventh Circuit's stern warning in Hercules Steel.  See Hercules Steel, 441 F.3d at 913-914.  However, while Francis' argument fails, the Court does not find it frivolous[19]; thus, sanctions are not appropriate.

---

[19]The Arbitration Rules, drafted by Landstar, reasonably (if erroneously) led Francis to believe that seeking review of the arbitrator's decision in this Court was appropriate.

Accordingly, it is hereby

**ORDERED**:

Plaintiff's Motion to Vacate and Set Aside Arbitration Decision (Doc. 1) is **DENIED**. This case is dismissed; the Clerk shall enter judgment in favor of Defendant Landstar System Holdings, Inc. and against Plaintiff Sharon Francis, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 25th day of November, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

jmm.
Copies:
counsel of record